FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 0 7 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**ORIGINAL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ROBERT RICHARD LUCAS, )
)
   Plaintiff, )
)
v. )
) Civil File Action No. _____
CITY OF BRASWELL, GEORGIA; )
WALTER A. WILLIAMS; RICHARD ) **1:10-CV-0043-MHS**
FENNELL, and ALLEN FENNELL, )
) **Jury Trial Demanded**
)
   Defendants. )

## COMPLAINT

COMES NOW, Plaintiff Robert Richard Lucas and files his <u>Complaint</u>

against the Defendants City of Braswell, Georgia, Walter A. Williams, Richard

Fennell and Allen Fennell, as follows:

## INTRODUCTION

1.

This is a civil action arising from the unlawful arrest, detention and

prosecution of Lucas caused by the willful and wrongful acts of the Defendants.

Lucas asserts violations of his rights under the Fourth Amendment of the United

States Constitution and brings those claims pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Lucas seeks equitable relief and monetary damages; he also seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Lucas also asserts claims under Georgia law arising from the same transactions and occurrences that form the basis for his claims under federal law.

## JURISDICTION AND VENUE

2.

This Court has original jurisdiction over Lucas' federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court may exercise supplemental jurisdiction over Lucas' state law claims pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because two or more of the defendants reside therein and Lucas' claims arose in this District.

## PARTIES

### 4.

Plaintiff Robert Richard Lucas ("Lucas") is a citizen of the State of Georgia residing in Paulding County.

### 5.

Defendant Walter A. Williams ("Williams") is a resident of Paulding County, Georgia and is subject to the personal jurisdiction of this Court. Williams may be personally served Summons and a copy of the Complaint at his residence, 34 Camden Pointe, Dallas, Georgia 30157.

### 6.

At all times relevant to this action, Williams was acting under color of state law and within the scope of his discretionary functions as duly sworn, certified law enforcement officer employed as the Chief of Police by the City of Braswell.

### 7.

Defendant Richard Fennell, Jr. ("Fennell"), is a resident of Paulding County, Georgia and is subject to the personal jurisdiction of this Court. Fennell

may be personally served with Summons and a copy of the Complaint at his residence, 2465 Eastern Avenue, Rockmart, Georgia 30153.

8.

At all times relevant to this action, Fennell was acting under color of state law and within the scope of his authority as the duly elected Mayor for the City of Braswell, Georgia.

9.

Defendant Allen Fennell, Jr. ("Allen Fennell") is a resident of Paulding County, Georgia and is subject to the personal jurisdiction of this Court. Allen Fennell may be personally served with Summons and a copy of the Complaint at his residence, 2459 Eastern Avenue, Rockmart, Georgia 30153.

10.

At all times relevant to this action, Fennell was acting under color of state law and within the scope of his authority as the duly appointed City Manager for the City of Braswell, Georgia.

11.

Defendant City of Braswell, Georgia ("Braswell") is a municipality organized pursuant to the Georgia Constitution and is subject to the jurisdiction of this Court. Braswell may be served with summons and process by and through Mayor Richard Fennell, 6997 Braswell Mountain Road, Rockmart, Georgia 30153.

12.

Braswell, acting pursuant to its governmental authority, operates the Braswell Police Department (BPD).

13.

Upon information and belief, Lucas alleges that Braswell has purchased liability insurance that covers some or all of the claims alleged herein against Braswell and the individual defendants, all of whom were acting in their capacities as employees or elected officials for the City of Braswell.

14.

Lucas alleges that Braswell has waived its sovereign immunity to the extent of any such liability insurance policy and may thus be held liable directly

and by respondiat superior liability for the acts and omissions of its employees and elected officials. See *Rodriguez et al v. Kraus et al*, 275 Ga. App. 118, 619 S.E.2nd 800 (2005).

## FACTUAL ALLEGATIONS

15.

The City of Braswell, Georgia consists of approximately 3.1 square miles of land and straddles the county line between Polk and Paulding counties.

16.

At the time of the last census, Braswell had a population of approximately 80 people, 25 households and 20 families.

17.

Despite being such a small town, Braswell has its own police department, employing a Chief of Police, a lieutenant and three officers. The city has a ratio of one officer for every 16 residents.

18.

Defendants Richard and Allen Fannen are residents of Braswell and members of the Fannen family.

19.

The Fannen family owns a lot of real estate in Braswell and the surrounding area.

20.

The Fannen family also owns the local liquor store and Braswell's only drinking establishment.

21.

Under State law, a city must offer some form law enforcement services in order to issue a liquor license to a drinking establishment.

22.

Braswell has a police department so the Fannen's can operate their drinking establishment.

23.

At all times relevant to this action, Plaintiff Lucas was a P.O.S.T. certified law enforcement officer.

24.

Braswell hired Lucas to serve as a part-time patrol officer in the BPD.

25.

Braswell ultimately  promoted Lucas to Chief of Police in October of 2006. Lucas served as Chief of Police for Braswell until November 19, 2007, when he resigned his position.

26.

Defendant Walter A. Williams became the acting Chief of Police for the City of Braswell after Lucas resigned.

27.

Prior to becoming the Chief of Police, Williams worked as a part-time police office for BPD.  He reported to Lucas.

28.

Williams also worked as a police office for the Powder Springs Police Department.

29.

In March 2007, Defendant Richard Fennell, Mayor for the City of Braswell, instructed Lucas to purchase two police vehicles for the BPD.

30.

In March 2007, Defendant Allen Fennell was the City Manager for Braswell.  Allen Fennell is Richard Fennell's father.

31.

Allen Fennell was aware that Richard Fennell asked Lucas to purchase two police vehicles for the BPD.

32.

The city did not have adequate vehicles for BPD.

33.

Lucas spoke to Williams.  Williams told Lucas that his other employer, the Powder Springs Police Department, had two used police cruisers for sale by auction.

34.

The City of Powder Springs had a 2002 Ford Crown Victoria for sale for $1,500.

35.

Lucas asked Richard Fennell for permission to purchase the 2002 Ford Crown Victoria for $1,500.

36.

Richard Fennell told Lucas that Braswell did not have the money to purchase the 2002 Ford Crown Victoria.

37.

Richard Fennell told Lucas that, if Lucas was willing to purchase the 2002 Ford Crown Victoria with his own money, Braswell would reimburse Lucas when Braswell collected its tax revenues at the end of the year.

38.

Allen Fennell knew that Richard Fennell had asked Lucas to purchase the 2002 Ford Crown Victoria with his own money.

39.

As Mayor of Braswell, Richard Fennell had actual and apparent authority to negotiate with Lucas on behalf of Braswell and enter into an agreement

whereby Lucas would use his own money to purchase the 2002 Ford Crown Victoria and Braswell would reimburse Lucas from tax revenues.

40.

Lucas agreed to purchase the 2002 Ford Crown Victoria with his own money because Richard Fennell promised that Braswell would reimburse him for the vehicle.

41.

Carlos McConnell was employed as a part-time Lieutenant in by BPD. Lucas asked McConnell to help him purchase the 2002 Ford Crown Victoria.

42.

McConnell and Lucas each agreed to pay $750.00.  Lucas agreed to pay McConnell back his share of the $750.00.

43.

Lucas paid McConnell back his share of the $750.00.

44.

Lucas gave McConnell $750.00 in cash and instructed him to go to the Powder Springs Police Department and purchase the 2002 Ford Crown Victoria.

45.

In his capacity as an employee of the Powder Springs Police Department, Williams was responsible for facilitating the sale of surplus vehicles like the 2002 Ford Crown Victoria.

46.

McConnell went to Powder Springs and met with Williams to purchase the 2002 Ford Crown Victoria.

47.

Williams knew that Lucas and McConnell were purchasing the vehicle with their own money.

48.

When they arrived in Powder Springs, McConnell and Williams learned that Powder Springs would not accept cash as a form of payment.

49.

McConnell went back to Rockmart, Georgia and got a cashier's check from his bank to pay for the 2002 Ford Crown Victoria. McConnell filled out the cashier's check and put "City of Braswell" on the check.

50.

When Lucas learned that McConnell put "City of Braswell" on the check, he was upset. Lucas was concerned that Braswell would not reimburse him.

51.

Williams agreed with Lucas. Williams was also concerned that Lucas be properly reimbursed for purchasing the vehicle.

52.

Williams insisted that only Lucas' name be listed on the title and bill of sale so that Lucas would be fully reimbursed by Braswell for the vehicle.

53.

Williams gave Lucas two blank bill of sale forms. Williams gave Lucas one bill of sale form to fill out for the sale between Lucas and the City of Powder Springs and one bill of sale form to fill out for the sale between Lucas and the City of Braswell.

54.

Williams gave Lucas title for the vehicle several months after Lucas purchased the vehicle.

55.

Captain Andrew Plummer of the BPD was present when Williams gave the title to Lucas.  Plummer and Williams were present when Lucas signed the title.

56.

Lucas put the 2002 Ford Crown Victoria in service with the BPD.  Plummer used the vehicle during the course and scope of his employment for BPD.

57.

The City of Braswell never reimbursed Lucas for the 2002 Ford Crown Victoria.

58.

On November 6, 2007, Richard Fennell lost the mayoral election to Jerry Adair.

59.

Lucas resigned as police chief for the City of Braswell on November 19, 2007.

60.

Before he resigned, Lucas again asked Richard Fennell if Braswell was going to reimburse Lucas for the 2002 Ford Crown Victoria.

61.

Richard Fennell replied that "he wasn't the mayor anymore."

62.

Allen Fennell was aware that Braswell never reimbursed Lucas for the 2002 Ford Crown Victoria.

63.

Allen Fennell told Lucas that he had "donated" the vehicle to Braswell. Lucas responded that he never "donated" the vehicle to Braswell and Braswell owed him the money for the vehicle.

64.

Lucas owned the 2002 Ford Crown Victoria and had valid title to the vehicle.

65.

When Richard Fennell told him that Lucas was not going to be reimbursed for the 2002 Ford Crown Victoria, Lucas went to Plummer's apartment and retrieved the 2002 Ford Crown Victoria.

66.

After Lucas stepped down, Braswell appointed Williams as the acting Police Chief.

67.

Richard Fennell instructed Williams to located the 2002 Ford Crown Victoria.

68.

Richard Fennell knew or should have known where the vehicle was located as Richard Fennell knew that Lucas lawfully owned the vehicle and had never been reimbursed by Braswell.

69.

Williams, Richard Fennell and Allen Fennell knew or should have known where the vehicle was located as these defendants all knew or should have

known that Lucas had valid title to the 2002 Ford Crown Victoria and Braswell had never paid Lucas for the vehicle.

70.

Williams was also aware that Lucas had repossessed the vehicle from Plummer after Lucas resigned because Braswell never paid Lucas for the vehicle.

71.

Williams also knew that Lucas had taken the 2002 Ford Crown Victoria to a used car dealership and inquired about selling the vehicle. Williams told the used car dealership not to sell the vehicle; the vehicle was "stolen."

72.

Williams made no effort to contact Lucas despite the fact that Lucas had been his supervisor, Lucas was a fellow law enforcement officer and Lucas had clear title to the 2002 Ford Crown Victoria.

73.

Instead, Williams met with the Mayor of Powder Springs, Patricia Vaughn, in mid-December 2007.

74.

Williams lied to Vaughn. Williams told Vaughn that Lucas had lost the title to the 2002 Ford Crown Victoria. Williams asked Vaughn to issue a replacement title listing the City of Braswell as the owner of the 2002 Ford Crown Victoria.

75.

The duplicate title was issued on December 21, 2007.

76.

As a law enforcement officer, Williams knew that he needed a duplicate title listing the City of Braswell as the owner of the 2002 Ford Crown Victoria so that he could list the vehicle as "stolen" in the GCIC/NCIC system.

77.

Allen and Richard Fennell were aware that Williams was taking steps to procure a duplicate title from Powder Springs under false pretenses.

78.

Allen and Richard Fennell were also aware that Williams intended to use the duplicate title to pursue a criminal prosecution of Lucas.

79.

Williams had the 2002 Ford Crown Victoria listed as a "stolen vehicle" on the Georgia Crime Information Database ("GCIC").

80.

Williams contacted the Polk County Sheriff's Office and informed them that Lucas might be in possession of a stolen vehicle – the 2002 Ford Crown Victoria.

81.

On December 21, 2007, several Polk County Sheriff's officers surrounded Lucas' house looking for Lucas.  Lucas was not home.

82.

Lucas learned that the Polk County Sheriff's officers were at his house because the 2002 Ford Crown Victoria had been reported stolen.

83.

Lucas called 9-1-1 and drove down to the Polk County Sheriff's Office. Lucas ultimately spoke with Deputy Carl Lively.  Lucas showed Lively the title

to the 2002 Ford Crown Victoria. Lively noted that Lucas was listed as the purchaser and that his signature appeared on the title.

84.

Lively called Williams. He informed Williams that Lucas had valid title to the 2002 Ford Crown Victoria. He told Williams that the vehicle would remain in Lucas' possession as he appeared to be the rightful owner of the vehicle.

85.

As the Polk County Sheriff's Department was unwilling to do the dirty work for the Defendants, Williams spoke again with Richard and Allen Fennell.

86.

Williams, Allen Fennell and Richard Fennell conspired together and agreed to institute a criminal prosecution against Lucas so that Braswell could get the 2002 Ford Crown Victoria without having to pay for the vehicle.

87.

In furtherance of the conspiracy, Williams swore out an arrest warrant for Lucas alleging that Lucas had stolen the 2002 Ford Crown Victoria from its rightful owner, Braswell, on or about November 12, 2007.

88.

At the time he swore out the warrant, Williams knew that the facts alleged in his warrant application were false, misleading and incomplete.   Williams represented that the vehicle was stolen on November 12th, despite knowing that Lucas remained the duly appointed Chief of Police in Braswell until November 19th.  Williams represented that Braswell purchased the vehicle, despite knowing that Lucas had paid for the vehicle with his own money and despite knowing that he had personally given Lucas title to the vehicle.

89.

Williams omitted critical facts from his presentation to the magistrate including that Lucas had a valid title to the vehicle in his possession, that the Bill of Sale had been made out in Lucas' name , that Lucas had paid for the vehicle with his own money, and that Williams had no proof that Braswell had ever reimbursed Lucas for the vehicle.

90.

On January 9, 2008, officers with the Floyd County Sheriff's Department arrived at Mr. Lucas's house. A deputy placed Lucas under arrest for Theft By Taking.

91.

Lucas was arrested and transported to the Floyd County jail. He was later transferred to the Paulding County jail.

92.

Lucas was placed in general population with inmates he had previously arrested.

93.

Lucas remained in custody for several hours prior to making bond.

94.

Following a preliminary hearing in Paulding County Magistrate Court, the judge dismissed the charges against Lucas as no probable cause existed to support the arrest warrant.

95.

Lucas' reputation in the community generally, and the law enforcement community in particular, has suffered irreparable harm as a result of the arrest.

96.

Lucas has been unable to find employment with any law enforcement agency.

97.

Lucas' was also the owner of a small trucking company.  His business has suffered tremendously as a result of his arrest.

## COUNT I

### FOURTH AMENDMENT – 42 U.S.C. §1983

### (False Arrest – Individual Defendants Only)

98.

The foregoing paragraphs one (1) through ninety-nine (99) are incorporated herein by this reference.

99.

At all times relevant to this action, the individual defendants were acting under color of state law and within the scope of their discretionary functions as employees or officers of Braswell.

100.

Allen Fennell and Richard Fennell, as officials of the City of Braswell, knew that no probable cause existed to support a criminal prosecution of Lucas for theft of the 2002 Ford Crown Victoria.

101.

Based upon his experience, knowledge and training as a law enforcement officer, Williams knew that no probable cause existed to support his application for an arrest warrant alleging that Lucas committed Theft By Taking of the 2002 Ford Crown Victoria on November 12, 2007, when Lucas remained employed by Braswell as its Chief of Police.

102.

Under the facts and circumstances alleged herein, an objectively reasonable law enforcement officer in Williams' position would have known that

no arguable probable cause existed to support issuance of an arrest warrant for Lucas.

103.

At all times relevant to this action, the law was established with obvious clarity that Williams' actions in swearing out an arrest warrant without probable cause, arresting a citizen pursuant to such a warrant and depriving a citizen of his liberty violated the Fourth Amendment of the United States Constitution.

104.

At all times relevant to this action, the law was established with obvious clarity that Allen and Richard Fennell's actions in directing and pursuing a criminal prosecution of Lucas without probable cause violated the Fourth Amendment of the United States Constitution.

105.

As a direct and proximate cause of the Defendants unlawful actions, Lucas was seized and detained against his will, and thereby suffered a loss of liberty in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, entitling him to actual and compensatory damages in an amount to be determined by the enlightened conscience of the jury.

106.

The actions of the Defendants described herein were willful, deliberate, and malicious, thereby entitling Lucas to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT II

### FOURTH AMENDMENT – 42 U.S.C. § 1983

### (Malicious Prosecution – Individual Defendants Only)

107.

The foregoing paragraphs one (1) through ninety-nine (99) are incorporated herein by this reference.

108.

At all times relevant to this action, the individual defendants were acting under color of state law and within the scope of their discretionary functions as employees of Braswell.

109.

Lucas' criminal prosecution was instituted by the issuance of a facially valid warrant by the Paulding County Magistrate Court.

110.

Lucas was seized and detained against his will pursuant to a facially valid warrant secured by the Defendants with malice and without probable cause.

111.

Lucas' criminal prosecution terminated in his favor when the Paulding County Magistrate judge dismissed the prosecution for lack of probable cause.

112.

The Defendants knowingly and willfully instituted and maintained a criminal prosecution against Lucas with malice and without probable cause.

113.

Under the facts and circumstances alleged herein, objectively reasonable government officials would have known that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

114.

At all times relevant to this action, the law was established with obvious clarity that instituting and maintaining a criminal prosecution of a citizen under

the circumstances described herein violated the Fourth Amendment of the United States Constitution.

115.

As a direct and proximate result of the Defendants' unlawful actions, Lucas was seized and detained against his will, subjected to criminal prosecution in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

116.

As a direct and proximate cause of the Defendants' unlawful actions, Lucas has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

117.

As a direct and proximate cause of the Defendants' unlawful actions, Lucas has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

118.

The Defendants' unlawful actions were done willfully, deliberately, and maliciously, thereby entitling Lucas to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT III

### O.C.G.A. § 51-7-1

### (False Arrest – All Defendants)

119.

The foregoing paragraphs one (1) through ninety-nine (99) are incorporated herein by this reference.

120.

Braswell, a municipal corporation, may be held liable for the acts and omissions of its employees and elected officials acting in the scope of their discretionary duties.

121.

Williams was acting within the scope of his employment as Chief of Police for the City of Braswell when he instituted and maintained a criminal prosecution of Lucas under process of law with malice and without probable cause.

122.

Richard Fennell was acting within the scope of his employment and discretionary authority as the duly elected Mayor of the City of Braswell when he encouraged, directed and participated in instituting and maintaining a criminal prosecution of Lucas under process of law with malice and without probable cause.

123.

Allen Fennell was acting within the scope of his employment and discretionary authority as the City Manager of the City of Braswell when he encouraged, directed and participated in instituting and maintaining a criminal prosecution of Lucas under process of law with malice and without probable cause.

124.

As a direct and proximate result of unlawful acts and omissions of the Defendants, including Braswell, Lucas was seized and detained against his will and subjected to criminal prosecution with malice and without probable cause.

125.

As a direct and proximate cause of the Defendants unlawful actions, Lucas has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

126.

As a direct and proximate cause of the Defendants' unlawful actions, Lucas has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

127.

The Defendants' unlawful actions were done willfully, deliberately, and maliciously, thereby entitling Lucas to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT IV

### O.C.G.A. § 51-7-40

### (Malicious Prosecution – All Defendants)

128.

The foregoing paragraphs one (1) through ninety-nine (99) are incorporated herein by this reference.

129.

Braswell, a municipal corporation, may be held liable for the acts and omissions of its employees and elected officials acting in the scope of their discretionary duties.

130.

Williams was acting within the scope of his employment as Chief of Police for the City of Braswell when he instituted and maintained a criminal

prosecution of Lucas under process of law with malice and without probable cause.

131.

Richard Fennell was acting within the scope of his employment and discretionary authority as the duly elected Mayor of the City of Braswell when he encouraged, directed and participated in instituting and maintaining a criminal prosecution of Lucas under process of law with malice and without probable cause.

132.

Allen Fennell was acting within the scope of his employment and discretionary authority as the City Manager of the City of Braswell when he encouraged, directed and participated in instituting and maintaining a criminal prosecution of Lucas under process of law with malice and without probable cause.

133.

As a direct and proximate result of unlawful acts and omissions of the Defendants, including Braswell, Lucas was seized and detained against his will and subjected to criminal prosecution with malice and without probable cause.

134.

As a direct and proximate cause of the Defendants unlawful actions, Lucas has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

135.

As a direct and proximate cause of the Defendants' unlawful actions, Lucas has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

136.

The Defendants' unlawful actions were done willfully, deliberately, and maliciously, thereby entitling Lucas to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

A)    That the Court declare that Defendants' actions, policies, and practices complained of herein violated the rights of the Plaintiff under the Fourth and Fourteenth Amendments of the Constitution of the United States of America;

B)    That Defendants, their agents, their employees and successors be permanently enjoined from violating the rights of the Plaintiff and others under the Fourth and Fourteenth Amendments to the Constitution of the United States of America;

C)    That special damages be awarded to compensate the Plaintiff for his economic injuries as a consequence of the Defendants' violations of his rights  in an amount to be determined by the enlightened conscious of the jury;

D)    That compensatory damages be awarded against each of the Defendants individually to compensate the Plaintiff for his pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of professional and personal reputation, as a consequence of the Defendants' actions  in an amount to be determined by the enlightened conscious of the jury;

35

E)      That punitive damages be awarded against the individual Defendants *only* in an amount to be determined by the enlighten conscious of the jury to deter them and others from similar misconduct in the future;

F)      That a trial by jury be had on all issues wherein a jury trial is permitted under law;

G)      That attorney's fees and expenses of litigation be awarded as authorized under 42 U.S.C. §1988 and O.C.G.A. § 13-6-11;

H)      That prejudgment interest be awarded; and,

I)      That the Court award such other equitable or monetary relief as the Court deems just and proper.

This ___7th___ Day of __January__, 2010.

Respectfully submitted,

_____
WILLIAM J. ATKINS
State Bar No. 027060

ATKINS & ATTWOOD, LLC
6400 Powers Ferry Road, Suite 112
Atlanta, Georgia  30339
Telephone: (404) 969-4130
Facsimile: (404) 969-4140
batkins@aa-llc.com

36

NATALIE WOODWARD

State Bar No. 773827

**WOODWARD + STERN, LLC**
1131 Canton Street
Roswell, Georgia 30075
Telephone: (770) 640-7667
Facsimile: (770) 640-7866
natalie@woodwardstern.com

**ATTORNEYS FOR THE PLAINTIFF**

37